IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER ODLE, Individually and on behalf of all others similarly situated, and MATTHEW PFEIL, on behalf of all others Similarly situated. <br><br> Plaintiff, <br><br> vs. <br><br> GAMESTOP CORP., d/b/a GAMESTOP INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 3:24-cv-01417 |

### FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW Plaintiffs, by and through their undersigned counsel, and for their Complaint against GameStop Corp., d/b/a GameStop, Inc., (hereafter, "GameStop"), states as follows:

### PARTIES

1.  At all times relevant herein, Christopher Odle was a resident, and citizen, of St. Clair County, Illinois.

2.  At all times relevant herein, Matthew Pfeil was a resident, and citizen, of St. Louis County, Missouri.

3.  At all times relevant herein, GameStop was a Delaware Corporation, with its principal place of business located in Texas. GameStop is therefore a citizen of both Delaware and Texas.

### FACTS SPECIFIC TO CHRISTOPHER ODLE

4.  On or about September 9, 2021, Christopher Odle ("Odle") went to a St. Clair County GameStop retail location to purchase a video game for an Xbox One.

5. On or about December 13, 2022, Odle went to a St. Clair County GameStop retail location to purchase four video games for the Nintendo Switch.

6. At the time of said purchases, Odle selected new video games and chose to buy new video games, as opposed to used video games.

7. Odle selected the games he wished to buy, but the game packaging he selected did not contain the actual disc or cartridge that contains the game software.

8. Odle went to the GameStop counter and informed the sales associate that he wished to purchase these games "new," as opposed to pre-owned or used.

9. The sales associate sold Odle games that were represented as "new."

10. The prices for these games were between $50.00 and $60.00 per game, which is generally the accepted price for a "new" version of these games.

**FACTS SPECIFIC TO MATTHEW PFEIL**

11. On or about October 12, 2023, Matthew Pfeil ("Pfeil") went to a St. Louis County GameStop retail location to purchase a video game for a PS5.

12. At the time of said purchases, Pfeil selected a new video game and chose to buy a new video game, as opposed to a used video game.

13. Pfeil selected the game he wished to buy, but the game packaging he selected did not contain the actual disc that contains the game software.

14. Pfeil went to the GameStop counter and informed the sales associate that he wished to purchase the game "new," as opposed to pre-owned or used.

15. The sales associate sold Pfeil a game that was represented as "new."

16. The price for this game was a price within the range of the generally the accepted price for a "new" version of this game.

## FACTS COMMON TO ALL COUNTS

17. Video game sales are a multi-billion dollar per year business.

18. This includes sales of new games, sales of pre-owned and used games and other related transactions.

19. Generally, the expectation of consumers is that when they buy a "new" game, it is a game for which the original manufacturer packaging has not been opened.

20. It is a well-known fact in the video game industry and resale market that a game in its "original" manufactures packaging that is still sealed is worth more than a game that has been opened.

21. For these reasons, purchasers of "new" unopened games are willing to pay a premium in price for "new" and/or unopened games versus a "used" or "opened" or "pre-owned" game.

22. GameStop is aware of this, and prices "new" games differently than "used" and "pre-owned" games.

23. To further illustrate GameStop's awareness of this point, GameStop's return policy on its website draws a specific difference between the return of "unopened" products such as video games and those that have been opened.

24. Upon information and belief, GameStop has a company-wide policy that limits or prohibits placing unopened video games on the floor of retail stores because of a belief that such games are easily portable and may be stolen.

25. To combat this perceived risk, GameStop has a company-wide policy that provides that video game discs are to be kept behind the counter to prevent theft.

26. As a result, almost every "new" game that GameStop sells has actually been opened.

27. GameStop effectuates this policy despite the fact that GameStop's return policy draws a distinction between opened and unopened games.

28. GameStop does this despite the fact GameStop is aware that unopened games in the original manufacturers sealed packaging are worth more in the video game market than opened games.

29. Despite this knowledge, GameStop charges its customers a premium price for games that GameStop itself has opened.

30. Despite the fact that GameStop has opened the game packaging, GameStop markets these games as "new."

31. GameStop customers who purchase games sold, marked, or marketed as "new" games, when those games have already been opened, are purchasing a product that is not worth the premium price they are paying for it, comes with less return options and is worth less on the resale market.

**COUNT I**
*(Illinois Uniform Deceptive Trade Practices Act)*
*(815 ILCS 510/1, et seq.)*

32. Odle incorporates paragraphs 1-31 above as though fully set forth herein under this Count I.

33. Odle asserts this Count I on behalf of himself and the Illinois Subclass against Defendant.

34. The Illinois Uniform Deceptive Trade Practices Act ("UDTPA") defines several practices which are considered unlawful. *815 ILCS 510/1, et seq.*

35. The UDTPA definition of "person" includes GameStop.

36. The UDTPA makes it unlawful to represent goods as having characteristics they do not have. *815 ILCS 510/2(5).*

37. The UDTPA makes it unlawful to represent that goods are new if they are altered. *815 ILCS 510/2(6).*

38. The UDTPA makes it unlawful to represent that goods are of a particular quality or standard or grade if they are not. *815 ILCS 510/7.*

39. The UDTPA makes it unlawful to engage in any activity which creates a likelihood of confusion or misunderstanding.

40. As a direct and proximate result of the actions of GameStop in violation of the UDTPA, Odle was injured and damaged.

41. Further, that the injuries and damages complained of by Odle are the same injuries and damages incurred by the other members of the class who were similarly wronged by GameStop.

WHEREFORE, Odle requests that the Court grant the following relief in favor of Odle and the Class he seeks to represent and against GameStop:

A. A preliminary and permanent injunction against GameStop to stop these violations;

B. Costs and attorney's fees incurred in bringing this suit.

### COUNT II
**(ILLINOIS CONSUMER FRAUD and DECEPTIVE BUSINESS PRACTICES ACT)**
**(815 ILCS 505/1, et seq.)**

42. Odle incorporates paragraphs 1-41 as stated above as though fully set forth under this Count II.

43. Odle asserts this Count II on behalf of himself and the Illinois Subclass against Defendant.

44. Odle and all others similarly situated are "persons" within the meaning of 815 ILCS 505/1(c).

45. GameStop is a "person" within the meaning of 815 ILCS 505/1(c).

46. Odle and all others similarly situated are "consumers" within the meaning of 815 ILCS 505/1(e).

47. At all times relevant herein, GameStop "conducted trade and commerce" within the meaning of 815 ILCS 505/1(f).

48. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, provides:

> [U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact . . . in the conduct of any trade or commerce are hereby declared unlawful . . .

49. GameStop's conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2.

50. In addition, violation of the UDAP is also a violation of ICFA. *815 ILCS 505/2.*

51. GameStop engaged in such conduct in the course of trade and commerce.

52. GameStop engaged in such conduct for the purpose of obtaining money from Odle and others similarly situated.

53. As a direct and proximate result of the material misrepresentations and/or omissions, GameStop violated the ICFA and Odle was injured and damaged.

54. Further that the injuries and damages complained of by Odle are the same injuries and damages incurred by other members of the class who were similarly wronged by GameStop.

WHEREFORE, Odle requests that the Court enter judgment in his favor and in favor of the Class and against GameStop for:

    A.    Actual damages; and,

    B.    Punitive damages; and,

    C.    An injunction against further violations; and,

    D.    Attorney's fees, litigation expenses and costs of suit; and,

    E.    Such other or further relief as the Court deems proper.

## COUNT III
### (Missouri Merchandising Practices Act)
### (Mo. Rev. State. Section 407.020, et seq,)

55.    Pfeil incorporates paragraphs 1-31 above as though fully set forth herein under this Count III.

56.    Pfeil asserts this Count III on behalf of himself and the Missouri Subclass against Defendant.

57.    The Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 (West 2010), ("MMPA") provides, in part, as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the state of Missouri, is declared to be an unlawful practice … Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

58.    The MMPA further provides for a civil action to recover damages in Mo. Rev. Stat. § 407.025.1, as follows:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

59. This Count III is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant. Defendant's business practices in its advertising, marketing, packaging, labeling and sales of its products as new, when they are in fact not new, as set forth herein, is an unconscionable, unfair, and deceptive act or practice and constitutes multiple, separate violations of Mo. Rev. Stat. § 407.020.

60. Plaintiff and members of the Missouri Subclass purchased GameStop games marketed and sold as "new."

61. Such purchase was primarily for personal, family, or household purposes.

62. In connection with the sale of games, Defendant misrepresented the goods as "new" when in fact they were not.

63. In connection with the sale of games, Defendant concealed a material fact.

64. Defendant's concealment, suppression, misrepresentations and/or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff Pfeil and members of the Missouri Subclass.

65. In violation of the MMPA, Defendant employed fraud, deception, false promise,

misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of its products in the State of Missouri.

66. Defendant engaged in the concealment, suppression, misrepresentations and/or omission of the aforementioned material facts with the intent that others, such as Plaintiffs Pfeil, the Missouri Subclass, and/or the general public would rely upon the concealment, suppression, misrepresentation and/or omission of such material facts and purchase GameStop products.

67. As a result of their purchase of GameStop Products, Plaintiff Pfeil and the members of the Missouri Subclass sustained ascertainable loss and damage in that, among other things, the actual value of the products on the dates they were sold to Plaintiffs was less than their value would have been on those dates had the products been as represented by Defendant.

68. Plaintiffs Pfeil and the members of the Missouri Subclass are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Missouri law, including Mo. Rev. Stat. § 407.025.

69. Furthermore, Defendant's unlawful conduct set forth in this Complaint was and is outrageous because of Defendant's evil motive or reckless indifference to and conscious disregard of the rights of others and for the rights of Plaintiff Pfeil and members of the Missouri Subclass and warrants an award of punitive damages to deter Defendant, and others in similar circumstances, from committing such actions in the future.

70. The injuries and damages complained of by Pfeil are the same injuries and damages incurred by the other members of the class who were similarly wronged by GameStop.

WHEREFORE, Pfeil requests that the Court enter judgment in his favor and in favor of the Class and against GameStop for:

A. Actual damages; and,

B.  Punitive damages; and,

C.  An injunction against further violations; and,

D.  Attorney's fees, litigation expenses and costs of suit; and,

E.  Such other or further relief as the Court deems proper.

## CLASS ALLEGATIONS

71.  Plaintiffs bring this action pursuant to Fed R. Civ. P. 23, on behalf of himself and all others similarly situated, as representative of the following Illinois Class:

**Illinois Class:** Commencing September 9, 2018, all Individuals who purchased a video game labeled as "new" by GameStop where the "new" video game had already been opened or removed by GameStop or its agents, employees or contractors or where the manufacturers original packaging had already been removed from the video game.

Excluded from the Class are: 1) GameStop employees, including its officers and agents and the immediate family of those persons; 2) Counsel for the parties herein; and 3) the Judge of the Court to which this case is assigned.

**Missouri Class:** Commencing October 12, 2018, all Individuals who purchased a video game labeled as "new" by GameStop where the "new" video game had already been opened or removed by GameStop or its agents, employees or contractors or where the manufacturers original packaging had already been removed from the video game.

Excluded from the Class are: 1) GameStop employees, including its officers and agents and the immediate family of those persons; 2) Counsel for the parties herein; and 3) the Judge of the Court to which this case is assigned.

72.  The requirements of Rule 23 have been met in that:

    a. The members of the Illinois Class are so numerous that joinder of all members would be impractical. The class encompasses all purchasers of "new" video games from GameStop in the State of Illinois for the past 3 years.

    b. The members of the Missouri Class are so numerous that joinder of all members would be impractical. The class encompasses all purchasers of "new" video games from GameStop in the State of Missouri for the past 5 years.

    c. Common questions of fact or law exist as to all members of each Class which common questions predominate over any questions affecting only individual members. Such questions include, but are not limited to:

        i. Does GameStop have a policy to remove "new" video games discs from the box; and/or

        ii. Does GameStop have a policy to remove the manufacturers' original packaging from "new" video games; and/or

        iii. Does GameStop price "new" video games at the same or similar price to other retailers selling "new" video games where the discs have not been removed; and/or,

        iv. Does GameStop price "new" video games at the same or similar price to other retailers selling "new" video games where the manufacturers original packaging has not been removed; and/or,

        v. Does GameStop market video games where the disc or cartridge has been removed as "new"; and/or

        vi. Does GameStop market or sell pre-owned or used video games as "new; and/or

        vii. Does GameStop market video games where the manufacturer's original packaging has been removed as "new"; and/or

        viii. Regarding the Illinois Class: whether GameStop violated 815 ILCS 510/1, *et. seq.*; and/or

        ix. Regarding the Illinois Class: whether GameStop violated 815 ILCS 505/1, *et seq.*

      x. Regarding the Missouri Class: whether GameStop violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 (West 2010).

d. Odle is a member of the Class he seeks to represent and will fairly and adequately assert, represent and protect the interests of the class. The interests of Odle are coincident with, and not antagonistic to, those of the other members of the Class. Odle has retained attorneys who are experienced in class action litigation.

e. Pfeil is a member of the Class he seeks to represent and will fairly and adequately assert, represent and protect the interests of the class. The interests of Pfeil are coincident with, and not antagonistic to, those of the other members of the Class. Pfeil has retained attorneys who are experienced in class action litigation.

f. The prosecution of separate actions by individual members of the class could lead to inconsistent or varying adjudications with respect to individual members of the class and could substantially impair or impede the ability of other class members to protect their interests.

g. The class action vehicle is the most appropriate and superior method for the fair and efficient adjudication of this controversy, given that:

    (1) Common questions of law or fact predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

    (2) Class members' individual damage claims are too small to make individual litigation an economically viable alternative;

  (3)  Class treatment is required for optimal deterrence and compensation and for limiting legal expenses incurred by class members;

  (4)  Despite the relatively small size of individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation;

  (5)  No unusual difficulties are likely to be encountered in management of this action as a class action in that all questions of law or fact to be litigated at the liability stage are common to both classes; and,

  (6)  Class certification is fair and efficient because prosecution of separate actions would create a risk of adjudications with respect to individual members of the class, which, as a practical matter, may be dispositive of the interests of other members not parties to the adjudication, or may substantially impair or impede their ability to protect their interests.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Christopher Odle, individually and on behalf of all others similarly situated, and Matt Pfeil, individually and on behalf of all others similarly situated, respectfully prays for an Order and Judgment as follows:

  A.  Certifying this action as a class action with an Illinois Class defined as set forth above (or as the Court may otherwise define), appointing Odle as class representative for the Class; and,

  B.  Certifying this action as a class action with a Missouri Class defined as set forth above (or as the Court may otherwise define), appointing Pfeil as class representative for the Class; and,

  C.  For an Order appointing David Cates and The Cates Law Firm, LLC and Sean Cronin and Donovan Rose Nester, P.C. and Chad Mooney and The Gori Law Firm as Co-Class Counsel herein; and,

      D.      For a judgment in an amount in excess of Fifty Thousand Dollars ($50,000.00) that will reimburse Odle and the members of the Illinois Class for any monies paid to GameStop in excess of the actual fair market value of the video game in the condition in which it was sold,

      E.      For a judgment in an amount in excess of Fifty Thousand Dollars ($50,000.00) that will reimburse Odle and the members of the Illinois Class for any monies paid to GameStop as a result of its violation of the Illinois Consumer Fraud And Deceptive Business Practices Act – 815 ILCS 505, *et seq*. and all statutory damages available therein, including any attorneys' fees, punitive damages and costs incurred; and,

      F.      For a judgment in an amount in excess of Fifty Thousand Dollars ($50,000.00) that will reimburse Pfeil and the members of the Missouri Class for any monies paid to GameStop as a result of its violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020, and all statutory damages available therein, including any attorneys' fees, punitive damages and costs incurred; and,

      G.      For injunctive relief; and

      H.      For an award of pre-judgment and post-judgment interest as provided by law; and,

      I.      For attorney fees, punitive damages and all other damages as authorized by law; and,

      J.      For such further relief which the Court deems just and proper under the circumstances.

## NOTICE OF LIEN

Please be advised that counsel for Odle and Pfeil has a lien upon any recovery herein for attorney fees and costs up to 33-1/3% or in such amount as the court awards.

Respectfully Submitted,

By:    */s Sean K. Cronin*
        Sean K. Cronin, #6292625
        DONOVAN ROSE NESTER, P.C.
        15 North 1st St., Suite A
        Belleville, IL 62220
        Telephone: (618) 212-5400
        Facsimile: (618) 212-6501
        Email: scronin@drnpc.com

        David Cates, #6289198
        THE CATES LAW FIRM, LLC
        216 West Pointe Drive, Suite A
        Swansea, IL 62226
        Telephone: (618) 277-3644
        Facsimile: (618) 277-7882
        Email: dcates@cateslaw.com
              kstjohn@cateslaw.com

        Chad M. Mooney, #6311237
        THE GORI LAW FIRM
        156 N. Main Street
        Edwardsville, IL 62025
        Telephone: (618) 659-9833
        Facsimile: (618) 659-9834
        Email: cmoney@gorilaw.com

**PROOF OF SERVICE**

  I hereby certify that on July 29, 2024, I electronically filed First Amended Class Action Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the counsel of record:

Kyle P. Seelbach
HUSCH BLACKWELL
8001 Forsyth Blvd, Suite 1500
St. Louis, MO 63105
kyle.seelbach@huschblackwell.com
**Attorneys for Defendant**

/s/ <i>Sean K. Cronin</i>