## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER ODLE, Individually and )
on behalf of all other similarly situated, )
and MATTHEW PFEIL, on behalf of all )
other similarly situated, )
                                )
        Plaintiff, )   Case No. 3:24-cv-1417-DWD
                                )
v. )
                                )
GAMESTOP CORP. d/b/a GAMESTOP, )
INC., )
                                )
        Defendant. )

## DEFENDANT GAMESTOP CORP.'S MOTION TO DISMISS
## UNDER RULE 12(b)(6) AND MEMORANDUM OF LAW IN SUPPORT

HUSCH BLACKWELL
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Phone: 314-480-1500
Facsimile: 314-480-1505

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
Phone: 212-382-3300
Facsimile: 212-382-0050

*Counsel for Defendant GameStop Corp.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ............................................................................................................... 3

LEGAL STANDARD............................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

I.   PLAINTIFF ODLE FAILS TO STATE A CLAIM UNDER THE ICFA OR UDTPA............6

     A. Odle Fails to State a Claim Under the ICFA ..............................................................6

         1. Odle Fails to State a Deceptive Practice Claim Under the ICFA ....................6

         2. Odle Fails to State an Unfairness Claim Under the ICFA ...............................9

     B. Odle Fails to State a Claim Under the UDTPA .........................................................12

II.  PLAINTIFF PFEIL FAILS TO STATE A CLAIM UNDER THE MMPA ..........................14

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AnchorBank, FSB v. Hofer*,
   649 F.3d 610 (7th Cir. 2011) ................................................................... 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 5

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
   282 F. Supp. 3d 1043 (N.D. Ill. 2017) ................................................... 12

*Bankers Tr. Co. v. Old Republic Ins. Co.*,
   959 F.2d 677 (7th Cir.1992) ..................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 5

*Benson v. Fannie May Confections Brands, Inc.*,
   944 F.3d 639 (7th Cir. 2019) ................................................................... 6

*Brooks v. Midas Int'l Corp.*,
   361 N.E.2d 815 (Ill. App. Ct. 1977) ................................................. 12, 13

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ................................................................... 5

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ......................................................... 5, 12, 13

*Castaneda v. Amazon.com, Inc.*,
   679 F. Supp. 3d 739 (N.D. Ill. 2023) ....................................................... 8

*Elder v. Coronet Ins.*,
   558 N.E.2d 1312 (Ill. 1990) ................................................................... 10

*Flynn v. Merrick*,
   881 F.2d 446 (7th Cir. 1989) ................................................................... 5

*Glazewski v. Coronet Ins.*,
   483 N.E.2d 1263 (Ill. 1985) ................................................................... 13

*Guajardo v. Skechers USA, Inc.*,
   2021 WL 4302532 (C.D. Ill. Sept. 21, 2021) ..................................... 12, 13

*Guerrero v. Henkel Corp.*,
   2024 WL 2769745 (E.D. Mo. May 30, 2024) ........................................ 14

*Halperin v. Int'l Web Servs., LLC*,
   123 F. Supp. 3d 999 (N.D. Ill. 2015) .................................................. 8

*Hennessey v. Gap, Inc.*,
   86 F.4th 823 (8th Cir. 2023) ........................................................ 15

*Huch v. Charter Commc'ns, Inc.*,
   290 S.W.3d 721 (Mo. 2009) ......................................................... 14

*Kremers v. Coca-Cola Co.*,
   712 F. Supp. 2d 759 (S.D. Ill. 2010) ................................................ 11

*Leszanczuk v. Carrington Mortg. Servs., LLC*,
   21 F.4th 933 (7th Cir. 2021) .................................................. 9, 10, 11

*Martin v. Wal-Mart Stores, Inc.*,
   2007 WL 3231414 (N.D. Ill. Oct. 26, 2007) ...................................... 7, 8

*Newman v. Metro. Life Ins. Co.*,
   885 F.3d 992 (7th Cir. 2018) ......................................................... 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ............................................... 6, 7, 15, 16

*Popp v. Cash Station, Inc.*,
   613 N.E.2d 1150 (Ill. App. Ct. 1992) ............................................... 12

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002) ....................................................... 9, 10

*Schulte v. Conopco, Inc.*,
   997 F.3d 823 (8th Cir. 2021) ........................................................ 14

*Schwebe v. AGC Flat Glass N. Am., Inc.*,
   2013 WL 2151551 (N.D. Ill. May 16, 2013) ....................................... 12

*Tierney v. Advocate Health & Hosp. Corp.*,
   797 F.3d 449 (7th Cir. 2015) ......................................................... 5

*Toulon v. Cont'l Cas. Co.*,
   877 F.3d 725 (7th Cir. 2017) .................................................... 10, 11

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
   20 F.3d 771 (7th Cir. 1994) .................................................................................. 5

**Statutes**

815 ILCS 505/1 .................................................................................................... 1

815 ILCS 510/1 .................................................................................................... 1

Mo. Ann. Stat. § 407.010 ..................................................................................... 1

Mo. Ann. Stat. § 407.025.1 ................................................................................. 14

**Rules**

Fed. R. Civ. P. 8 ................................................................................................... 5

Fed. R. Civ. P. 9(b) ....................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs Christopher Odle and Matthew Pfeil have now amended their complaint twice. Yet the second amended complaint still fails to plead a viable claim. When the Court previously dismissed all counts of the first amended complaint, it held that Plaintiffs failed to plausibly allege that Defendant GameStop Corp. ("GameStop") engaged in any deceptive or unfair practices in connection with Plaintiffs' purchases of video games. Plaintiffs' handful of new allegations in the second amended complaint come nowhere close to pleading any such practices with the particularity required by Rule 9(b) for claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* ("UDTPA"), or the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq.* ("MMPA"). These claims should be dismissed with prejudice.

*First*, Odle still fails to allege a deceptive practice under the ICFA. He does not allege any new facts about *his* purchase of a "new" game from GameStop on September 9, 2021 to establish such a practice. Instead, he alleges "on information and belief" that at undisclosed times, locations, and occasions, GameStop may have sold games as "new" to unspecified persons that were previously played by employees or owned by prior consumers as part of a supposed fraudulent scheme. But he fails to allege any specific facts to corroborate the grounds for his suspicions and, critically, does not allege that the game he purchased was played by an employee, owned by a previous consumer, or otherwise not "new," as the Court interpreted that term in its decision. These new "on information and belief" allegations are insufficient to plead with particularity that GameStop violated the ICFA.

*Second*, Odle still fails to allege an unfairness claim under the ICFA. Although the Court recognized Odle's prior allegations were nothing more than bare assertions of unfairness that were insufficient to state a consumer fraud claim, Odle has pleaded no new facts to support this claim.

1

As a result, Odle's unfairness claim under the ICFA fails for the all the same reasons as before—Odle has not and cannot allege that GameStop's conduct offended one of Illinois' public policies, was so oppressive that he had little choice but to submit to the conduct and buy the game, or caused him a substantial injury because he had no alternative options to buy the game.

*Third*, Odle still fails to allege a viable UDTPA claim. He alleges no new facts to distinguish his UDTPA claim from his ICFA claim and it therefore fails for the same reasons as before. It also fails because Odle cannot plausibly allege a likelihood of future harm now that he is aware of GameStop's alleged trade practices. While both Odle himself and the Court recognized this threshold defect, Odle now speculates that he may be harmed in the future. But this is precisely the type of speculative claim of future harm that courts in this circuit reject as sufficient to plead a UDTPA claim. It should be rejected here as well.

*Finally*, Pfeil still fails to allege a deceptive or unfair practice claim under the MMPA. Like Odle, Pfeil alleges no new facts about his purchase of a "new" game from GameStop on October 12, 2023 to establish that GameStop engaged in any deceptive or unfair practice during that transaction. He instead relies on the same "on information and belief" allegations as Odle of a fraudulent scheme of selling used games as "new" without alleging specific facts to corroborate the grounds for his suspicions or to show that the game he purchased was involved in the alleged scheme. Pfeil's MMPA claim therefore fails for the same reasons as Odle's ICFA claim.

In their third attempt at pleading a viable claim, which now comes after Plaintiffs have been taking discovery for many months, Plaintiffs cannot allege any facts—whether based on their own experiences or the experiences of others—to support their new, generalized "on information and belief" allegations of a fraudulent scheme. Such bare assertions of fraud flout the very purpose of Rule 9(b). Plaintiffs' claims should be dismissed with prejudice pursuant to Rule 12(b)(6).

## BACKGROUND

Plaintiffs' second amended complaint ("SAC") recycles the same allegations of Plaintiffs' purchases of new video games at GameStop's retail stores. SAC ¶¶ 4-16. Odle alleges that he bought one new game on September 9, 2021 at a GameStop store in St. Clair County, Illinois. *Id.* ¶ 4.[1] Pfeil also alleges that he bought one new game on October 12, 2023 at a GameStop store in St. Louis County, Missouri. *Id.* ¶ 11.

For both of these purchases, Plaintiffs continue to rely on the same alleged events. After arriving at the stores, they chose the games they wanted to buy from the models displayed on the floor. *Id.* ¶¶ 6, 12. They then learned the floor models did not contain the game discs. *Id.* ¶¶ 7, 13. So they went to the counter and informed the sales associate they wanted to buy the games as "new" "[a]s opposed to pre-owned or used." *Id.* ¶¶ 8, 14. They then bought games "that were represented as 'new.'" *Id.* ¶¶ 9, 15. They do not allege the games they bought were not "new" because they had been pre-owned or used. They allegedly paid the generally accepted price for new games, but do not specifically identify how much they paid. *Id.* ¶¶ 10, 16.

As with the first amended complaint ("FAC"), Plaintiffs also continue to allege that GameStop sells games as "new" even when it has opened the original packaging in accordance with one of its internal policies. *Id.* ¶¶ 25-28. They claim that this policy limits or prohibits retail stores from displaying unopened games in the store to combat theft of games, which are easily portable. *Id.* ¶ 25. Rather than display unopened games on the floor, they allege that GameStop removes the discs from the packaging and keeps them safe behind the counter until a consumer

---

[1] Odle also alleges that he "purchased numerous games over many years at various GameStop locations which he believed were new and unused." SAC ¶ 5. The SAC does not say whether these alleged purchases are also part of Odle's claims under the ICFA and UDTPA. It also does not allege what he purchased, when those purchases occurred, any details about where they occurred, or what, if any, representations were made to him in connection with those purchases.

makes a purchase and then sell those games as "new." *Id.* ¶ 27-28. While Plaintiffs allege this policy means that "every 'new' game that GameStop sells has actually been opened," *id.* ¶ 28, they contradict themselves because they also recognize that "GameStop's return policy draws a distinction between opened and unopened games," *id.* ¶ 40. GameStop obviously could not accept returns of unopened games if they did not sell unopened games in the first place.

As to the new allegations in the SAC, Plaintiffs now allege "on information and belief" that, at undisclosed times, locations, and occasions, GameStop has another policy or is otherwise aware that employees "could 'check out'" the disc of one of these opened games to play it before selling the game as "new." *Id.* ¶¶ 29-36. Plaintiffs assert "on information and belief" that these policies are a "ruse" to effectuate and conceal a purported "regular practice" of selling games as "new" that have actually been used by an employee or even a prior owner. *Id.* ¶¶ 36-43. As such, Plaintiffs claim "on information and belief" that unnamed consumers may buy "new" games that have been opened from the original packaging and played by employees or owned by prior consumers. *Id.* ¶¶ 36-43.

Plaintiffs offer no specific facts to support these suspicions. Plaintiffs do not allege that the games they bought had been "checked out" by an employee or in anyway played or used before Plaintiffs purchased them, or that the games were otherwise not actually "new" as the Court interpreted that term in its decision on the prior motion to dismiss. ECF No. 46 (the "Order"). As with the FAC, Plaintiffs' allegations in the SAC continue to show they received exactly what they wanted: new video games, as opposed to pre-owned or used. *Id.* ¶¶ 8-9, 14-15.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires dismissal when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). While well-pleaded facts are taken as true for purposes of a motion to dismiss, factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "allegations in the form of legal conclusions are insufficient" to state a plausible claim for relief on its face. *Tierney v. Advocate Health & Hosp. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015). A complaint that "merely parrot[s] the statutory language of the claims . . . rather than providing some specific facts to ground those legal claims" must be dismissed. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

As this Court held, Plaintiffs' claims sound in fraud, which means that Plaintiffs must also satisfy Rule 9(b). Order at 16-18 (collecting cases). To meet their pleading burden, Plaintiffs "must plead with particularity the circumstances constituting fraud" and "identify the 'who, what, when, where, and how' of the alleged fraud." Order at 16 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). Requiring this level of particularity serves the concurrent goals of "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Thus, while the precise level of particularity will naturally vary depending upon the specific facts of the case, *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted), "cryptic statements" suggesting fraud will not suffice; nor will mere references to "plans and schemes." *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989) (citation omitted).

**ARGUMENT**

I.  **PLAINTIFF ODLE FAILS TO STATE A CLAIM UNDER THE ICFA OR UDTPA**

A.  **Odle Fails to State a Claim Under the ICFA**

Odle fails to state a claim under the ICFA because he has not adequately alleged that GameStop's practices were deceptive or unfair. To state a claim under the ICFA, Odle "must plead facts demonstrating that: (1) the defendant committed a deceptive or unfair act; (2) the defendant intended that others rely on the deception; (3) the act occurred in the course of trade or commerce; and (4) the act caused actual damages." Order at 18 (citing *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019)). Because Odle continues to rely on allegations of fraudulent conduct to assert both deceptive and unfair claims under the ICFA (SAC ¶ 63), both claims are subject to Rule 9(b). Order at 16-17. The SAC, however, provides no new facts to meet this pleading requirement for either claim.

1.  **Odle Fails to State a Deceptive Practice Claim Under the ICFA**

The Court previously dismissed Odle's deceptive practice claim under the ICFA for failing to adequately allege that GameStop made a misleading representation or material omission in connection with his purchase on September 9, 2021 at an Illinois retail store. Order at 18-21. In the SAC, Odle alleges no new facts with respect to this transaction. *Compare* FAC ¶¶ 4-10, *with* SAC ¶ 4-10. Rather than allege new facts about his own purchase, Odle instead points to general, indistinct allegations that at some indeterminate points in time, at undisclosed locations, GameStop may have sold to unnamed persons games as "new" that were previously played by employees or owned by prior consumers as part of a fraudulent scheme. SAC ¶¶ 29-43. These hollow allegations of fraud on "information and belief" are insufficient to rescue his deceptive practice claim.

A "plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli Armstrong Tire Corp. Retiree Med.*

*Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (citing *Bankers Tr. Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)). Where, however, "the facts constituting the fraud are not accessible to the plaintiff," the plaintiff may plead facts based on information and belief *only if* the plaintiff also provides "the grounds for his suspicions." *Id.* at 443 (citations omitted). And "when someone alleges fraud based on information and belief, not just any grounds will do." *Id.* Rule 9(b) requires that "[t]he grounds for the plaintiff's suspicions must make the allegations *plausible*." *Id.* (emphasis in original). So to survive a motion to dismiss a fraud claim under the ICFA, a plaintiff pleading facts on information and belief must provide "some firsthand information to provide grounds to corroborate [the plaintiff's] suspicions." *Id.* at 446.

Odle fails to do so—he provides *no* grounds to corroborate his suspicions that GameStop sells games as "new" that have been previously played by an employee or owned by a prior consumer, let alone for the game that he purchased. *Id.* ¶¶ 29-43. *Martin v. Wal-Mart* is instructive on this point. In that case, the plaintiff alleged "on information and belief" that Wal-Mart engaged in a deceptive act or practice because it sold the plaintiff an MP3 player as "new" even though it had allegedly been used by another consumer. *Martin v. Wal-Mart Stores, Inc.*, No. 07-cv-3458, 2007 WL 3231414, at *2 (N.D. Ill. Oct. 26, 2007). The plaintiff further alleged "[on] information and belief" that Wal-Mart "routinely re-packages, restocks and sells returned electronics as new merchandise," which are "not marked or discounted to reflect that they have been used." *Id.* at *1-2. To that end, the plaintiff alleged—again "on information and belief"—that Wal-Mart "benefit[ted] from this policy by . . . selling used items at new item prices." *Id.* at *1. As such, the plaintiff claimed that she purchased an MP3 player that was worth less than she believed it to be worth. *Id.*

The court held that these types of allegations on information and belief were insufficient to allege a deceptive act or practice under the ICFA:

> Plaintiff has not . . . set forth any basis for her "information and belief" that the MP3 player she purchased had been returned to and re-packaged by Wal-Mart or that Wal-Mart routinely sells used electronics as new. Plaintiff does not, for example, identify any other customers who discovered that electronic devices they purchased from Wal-Mart had been used or allege that any current or former Wal-Mart employee has acknowledged that Wal-Mart re-sells used electronics. Without some facts that suggest Wal-Mart knew the MP3 player plaintiff purchased was used, plaintiff has not alleged with particularity that Wal-Mart engaged in a deceptive act or practice. Accordingly, the Court dismisses without prejudice plaintiff's ICFA claim.

*Id.*; *cf. Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 747, 752 (N.D. Ill. 2023) (dismissing ICFA claim where plaintiff's grounds for suspicion of defects with the PlayStation 5 video game console were based on four customer reviews); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1008 (N.D. Ill. 2015) ("If all [plaintiff] can submit . . . is a list of anonymous and unsubstantiated user comments [of an ICFA violation], his complaint badly flunks Rule 9(b).").

Odle's allegations are nearly identical to those in *Martin v. Wal-Mart*. He alleges "on information and belief" that at undisclosed times, locations, and occasions, GameStop employees "could 'check out'" the disc of a display game to play it before that game was sold as "new." SAC ¶¶ 29-36. He claims that GameStop allowed employees to do this as part of a supposed scheme to sell used games at the same price as "new" games. *Id.* ¶¶ 37-43. He does not, however, allege any specific facts to support this belief or identify a specific instance where this has ever occurred at any GameStop retail location, much less at the store where he shopped on September 9, 2021. Odle similarly alleges that GameStop sells games as "new" when they have been used by a prior owner. *Id.* ¶¶ 42-43. But again, he neither alleges specific facts to support his belief that GameStop actually sells previously owned games as "new" nor identifies a specific instance where this has

ever occurred.[2] Indeed, Odle fails to even plead that the game he purchased on September 9, 2021 was itself "checked out" and played by an employee, owned by a previous consumer, or otherwise not "new," as the Court interpreted that term in the Order. Accordingly, Odle's new "on information and belief" allegations are insufficient to plead with particularity that GameStop violated the ICFA by representing that the game he purchased on September 9, 2021 was "new."

Odle's deceptive practice claim under the ICFA should therefore be dismissed.

### 2.    Odle Fails to State an Unfairness Claim Under the ICFA

The Court also found that Odle failed to adequately allege an ICFA claim premised on unfairness. Order at 18 n.3. As the Court recognized, Odle merely alleged "bare assertion[s] of unfairness" insufficient to plead a consumer fraud claim. *Id.* While the SAC fails to cure these defects by alleging no new allegations about how GameStop's alleged conduct was unfair, GameStop nevertheless addresses the elements of this claim below.

To determine unfairness, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Id.* (quoting *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002 (7th Cir. 2018)); *Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940 (7th Cir. 2021) (cleaned up) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). A practice is unfair if it meets one of these three prongs to a substantial extent or if it meets all three to a lesser degree. *Leszanczuk*, 21 F.4th at 940. Odle has pleaded no new facts to meet any of the three prongs.

*First*, Odle still has not alleged that GameStop's conduct offends any public policy. A

---

[2] Plaintiffs' allegations further undercut the notion that GameStop sells games that have been previously owned by a customer as "new" because they recognize that GameStop "prices 'new' games differently than 'used' and 'pre-owned' games." SAC ¶ 23.

practice "offends public policy" when it "violates a standard of conduct embodied in a statute, the common law, or otherwise, *i.e.*, if 'it is within at least the penumbra of some common-law, statutory or other established concept of unfairness.'" *Id.* at 940-41 (quoting *Elder v. Coronet Ins.,* 558 N.E.2d 1312, 1316 (Ill. 1990)). In the SAC, Odle identifies no public policy that GameStop's alleged conduct offends. He therefore fails the first prong of the unfairness test. *Robinson*, 775 N.E.2d at 963 (finding that a "bare assertion of unfairness" without describing in what manner the alleged practice violates public policy is insufficient to state a cause of action).[3]

*Second*, Odle still has not alleged that GameStop's alleged conduct was immoral, unethical, oppressive, or unscrupulous. The second prong of the unfairness test requires showing that the conduct "leave[s] the consumer with little alternative except to submit to it." *Leszanczuk*, 21 F.4th at 943. In the SAC, Odle does not allege that he had little alternative except to buy the game he was offered—he does not, for example, allege that GameStop concealed the fact that the game was opened before he bought it or that he was unable to ask if GameStop had any sealed copies available for sale before purchasing an opened copy. Nor does Odle allege that he was unable to shop elsewhere to buy a sealed copy of the game. On the contrary, he admits that the video game industry is massive and he, in fact, had numerous alternatives since he claims no other major retailer of video games has an alleged policy like GameStop. SAC ¶¶ 17, 26. As such, Odle fails to meet the second prong of the unfairness test. *Leszanczuk*, 21 F.4th at 943 (finding that this factor not met where plaintiff did not allege that she did not "freely enter into" mortgage contract); *Toulon*

---

[3] Odle claimed in opposition to GameStop's motion to dismiss the FAC that GameStop's policy of selling opened, but unused games, as "new" constituted false advertising in violation of Illinois public policy. ECF 33 at 6. Even though the Court advised Odle that he failed to include such allegations in the FAC, Odle nevertheless failed to cure that deficiency in the SAC. Nor could he because he does not allege any facts that show that GameStop made any false advertisement about the game he purchased on September 9, 2021.

*v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (finding that this factor not met where plaintiff "was in no way forced to buy" insurance policy at issue).

   *Third*, for similar reasons, Odle still has not alleged a substantial injury. To satisfy the third prong of the unfairness test, a trade practice must cause an injury to consumers that is "(1) [] substantial; (2) not [] outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) [] an injury that consumers themselves could not reasonably have avoided." *Leszanczuk*, 21 F.4th at 943 (cleaned up). The injury here is one that Odle "quite easily could have avoided" by seeking out a different video game retailer. *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 773 (S.D. Ill. 2010). While Odle claimed in his prior opposition that he would have had to conduct external research to discover the purported diminished value of the game he purchased, his own allegations belie that claim. ECF 33 at 7-8. He alleges that "[i]t is a well-known fact in the video game industry . . . that a game in its 'original' manufacturers packaging that is still sealed is worth more than a game that has been opened." SAC ¶ 20. As such, Odle would have known, after seeing that GameStop was offering to sell him an opened copy of the game, that it may not be worth the same as a sealed copy of the same game. He thus could have reasonably avoided his alleged injury by simply asking if a sealed copy of the game was available for purchase or seeking to buy such a copy at any of the other many video game retailers. *Leszanczuk*, 21 F.4th at 943 ("[Plaintiff] reasonably could have avoided the inspection fee by contracting with a different mortgage servicer); *Toulon*, 877 F.3d at 741 ("[Plaintiff] cannot establish substantial injury because she could have avoided the harm by purchasing a different long-term care insurance policy from another company."). As a result, Odle also fails to meet the third prong of the unfairness test.

   For these reasons, Odle's unfairness claim under the ICFA also should be dismissed.

11

### B.     Odle Fails to State a Claim Under the UDTPA

As the Court previously recognized, Odle's UDTPA claim hinged on the same allegations as his ICFA claim. Order at 22. In the SAC, Odle has not alleged any new facts to distinguish his UDTPA claim from his ICFA claim. *Compare* SAC ¶¶ 46-55 (UDTPA claim), *with id.* ¶¶ 56-68 (ICFA claim). As a result, Odle's UDTPA claim fails for the same reason as his ICFA claim—he fails to sufficiently allege a deceptive misrepresentation or omission under Rule 9(b). Order at 22; *Guajardo v. Skechers USA, Inc.*, No. 19-cv-04104, 2021 WL 4302532, at *5 (C.D. Ill. Sept. 21, 2021) ("Because 'a deceptive misrepresentation or omission' is a necessary element of both claims, the UDTPA claim is dismissed as well." (citations omitted)); *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12-cv-9873, 2013 WL 2151551, at *3 (N.D. Ill. May 16, 2013) ("As with the ICFA claim, the [plaintiffs'] UDTPA claim is deficient with respect to [defendant] because the [plaintiffs] never received any type of deceptive communication from [defendant].").

Odle's UDTPA claim also fails for the same independent reason that he does not allege a likelihood of future harm absent an injunction. Order at 22-23. "The likelihood of future harm occurring absent an injunction is an element of liability on the [UDTPA] claim, not merely a separate element of damages." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017). As a result, "the consumer must allege facts which would indicate that he is likely to be damaged in the future." *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1157 (Ill. App. Ct. 1992) (cleaned up). Yet "[t]he problem in most consumer actions under the [UDTPA] is the inability to allege facts indicating the likelihood of damage in the future." *Id.* (citing *Brooks v. Midas Int'l Corp.*, 361 N.E.2d 815, 821 (Ill. App. Ct. 1977) (in a consumer action under the UDTPA, "[o]rdinarily, the harm has already occurred")).

In *Camasta*, the Seventh Circuit considered whether the plaintiff had sufficiently alleged a likelihood of future harm based on Jos. A. Bank's practice of advertising normal retail prices for

shirts as temporary price reductions. *Camasta*, 761 F.3d at 735. The Seventh Circuit found that the plaintiff failed to do so because he now knew of the alleged sales practices: "Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future." *Id.* at 741. While this finding was in dicta, federal courts in Illinois, including this Court, have followed the Seventh Circuit's reasoning in dismissing UDTPA claims where the plaintiff is already aware of the deceptive practice. Order at 22-23; *see, e.g.*, *Guajardo*, 2021 WL 4302532, at *6 (collecting cases); *see also Glazewski v. Coronet Ins.*, 483 N.E.2d 1263, 1267 (Ill. 1985) ("The plaintiffs know the problems associated with the coverage, and, armed with that knowledge, can avoid it.").

In the SAC, Odle tries to avoid dismissal of his UDTPA claim by alleging that he "may purchase games in the future that have been used without [his] knowledge, despite being marketed as 'new.'" SAC ¶ 45. But this is precisely the type of "speculative claim" that was rejected in *Camasta* and other courts in this circuit. *See Camasta*, 761 F.3d at 741 ("Without more than the speculative claim that he will again be harmed by [the defendant], Camasta is not entitled to injunctive relief."); *Guajardo*, 2021 WL 4302532, at *6 (allegations that there was an "extremely high likelihood that [plaintiff] and Illinois Class members may personally suffer future damages" were insufficient to state a UDTPA claim). Indeed, Odle already admitted that he "been made aware of the deceptive practices employed by [GameStop] and therefore would be unable to allege the risk of future harm to himself." ECF 33 at 16. Nothing has changed since then—Odle is armed with the knowledge of GameStop's alleged practices and is therefore unlikely to suffer future harm. *Guajardo*, 2021 WL 4302532, at *6. And since Odle "cannot succeed in obtaining injunctive relief in his individual action, the injunctive relief sought by him in his representative capacity on behalf of all class members is likewise unavailable." *Brooks v. Midas-Int'l Corp.*, 47 Ill. App. 3d 266, 276 (1977). Odle's UDTPA claim also should be dismissed.

## II.     PLAINTIFF PFEIL FAILS TO STATE A CLAIM UNDER THE MMPA

The Court previously dismissed Pfeil's MMPA claim for the same reason as Odle's ICFA claim: Pfeil failed to adequately allege that GameStop made a misleading representation or material omission in connection with his purchase at a Missouri retail store on October 12, 2023. Order at 23-24. Like Odle, Pfeil alleges no new facts in the SAC with respect to this transaction. *Compare* FAC ¶¶ 11-16, *with* SAC ¶ 11-16. Instead, Pfeil relies on the same general, indistinct allegations as Odle that at some indeterminate points in time, at undisclosed locations, GameStop may have sold games to unnamed persons as "new" that were previously played by employees or used by a prior owner. SAC ¶¶ 29-36. These allegations are also insufficient to save Pfeil's MMPA claim under Rule 9(b). *See* Order at 17-18 (MMPA claim subject to Rule 9(b)).

To state a claim under the MMPA, Pfeil must allege, among other things, that he suffered an ascertainable loss of money "as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Mo. Ann. Stat. § 407.025.1. The practices declared unlawful under the MMPA are "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." *Id.* § 407.020(1). "[T]he MMPA does not define 'unfair' or 'deceptive practices'" and leaves "to the court in each particular instance the determination whether fair dealing has been violated." *Guerrero v. Henkel Corp.*, No. 24-cv-00057, 2024 WL 2769745, at *4 (E.D. Mo. May 30, 2024) (quoting *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. 2009)). Accordingly, "[w]hen there is 'no evidence of a course of conduct . . . that would amount to fraud or deception,' MMPA complaints can be dismissed." *Id.* (quoting *Schulte v. Conopco, Inc.*, 997 F.3d 823, 826 (8th Cir. 2021)).

Pfeil has not pleaded any such course of conduct with the requisite particularity under Rule

9(b). Because Pfeil's new allegations of fraud are made "on information and belief," Pfeil must provide "the grounds for his suspicions" and include "some firsthand information to provide grounds to corroborate [his] suspicions." *Pirelli*, 631 F.3d at 442, 446 (citations omitted); *see Hennessey v. Gap, Inc.*, 86 F.4th 823, 830 (8th Cir. 2023) (dismissing MMPA claim where plaintiff failed to allege "facts supporting her information-and-belief allegations").

Pfeil fails to do so. Like Odle, Pfeil relies on the same allegations "on information and belief" that at undisclosed times, locations, and occasions, GameStop employees "could 'check out'" the disc of a display game to play before it was sold as "new" as part of a supposed scheme to sell used games at the same price as "new" games. SAC ¶¶ 29-43. Yet Pfeil alleges no specific facts to support this belief or a specific instance where this has ever occurred at any of GameStop's retail locations, including the store where he shopped on October 12, 2023. Pfeil also alleges that GameStop sells games as "new" when they have been used by a prior owner. *Id.* ¶¶ 42-43. But he alleges no specific facts to support his belief that GameStop actually sells previously owned games as "new" nor identifies a specific instance where this has ever occurred. Indeed, Pfeil, like Odle, fails to plead that he believed the game he purchased was itself "checked out" and played by an employee, owned by a previous consumer, or was otherwise not "new," as the Court interpreted that term in the Order. Pfeil's new "on information and belief" allegations are insufficient to plead with particularity a course of conduct that would amount to fraud or deception under the MMPA merely because GameStop sold him a game as "new."

Pfeil's MMPA claim should be dismissed.

## CONCLUSION

Following the dismissal of their claims, Plaintiffs have resorted to a "sue first, ask questions later" philosophy that the Seventh Circuit has discouraged in fraud lawsuits. *Pirelli*, 631 F.3d at 441. They allege no specific facts to support their new accusations of fraud against GameStop either in connection with their own transactions or more broadly. Their attempt to skate by the pleading stage with these vague charges of fraud in the hopes of fishing for support in discovery should be rejected. Plaintiffs' claims under the ICFA, UDTPA, and MMPA should be dismissed with prejudice pursuant to Rule 12(b)(6).

Dated: May 16, 2025                     Respectfully submitted,

                                        By: */s/ Kyle P. Seelbach*
                                        Kyle P. Seelbach, #6233971
                                        **HUSCH BLACKWELL LLP**
                                        8001 Forsyth Blvd., Suite 1500
                                        St. Louis, MO 63105
                                        Phone: 314-480-1500
                                        Facsimile: 314-480-1505
                                        kyle.seelbach@huschblackwell.com

                                        Joshua M. Slocum (*pro hac vice*)
                                        Maxwell G. Dillan (*pro hac vice*)
                                        Jocelyn M. Stuto (*pro hac vice*)
                                        **WOLLMUTH MAHER & DEUTSCH LLP**
                                        500 Fifth Avenue
                                        New York, NY 10110
                                        Phone: 212-382-3300
                                        Facsimile: 212-382-0050
                                        jslocum@wmd-law.com
                                        mdillan@wmd-law.com
                                        jstuto@wmd-law.com

                                        *Counsel for Defendant GameStop Corp.*

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of May, 2025, a true copy of the foregoing was served upon counsel of record via the Court's electronic case filing system.

*/s/ Kyle P. Seelbach*
*Counsel for Defendant GameStop Corp.*