## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTOPHER ODLE, Individually and on behalf of all others similarly situated, and MATTHEW PFEIL, on behalf of all others Similarly situated, and ROBERT MCCONNELL, Individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | Case No. 24-CV-1417-DWD |
| Plaintiffs, | ) | |
| vs. | | |
| GAMESTOP CORP. d/b/a GAMESTOP, INC.,, | | |
| Defendant. | | |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

This matter is before the Court on Defendant GameStop Corporation's ("GameStop") Motion to Dismiss Plaintiffs' Third Amended Complaint under Rule 12(b)(6) for failure to state a claim. (Doc. 72). Plaintiffs have responded (Doc. 73), and GameStop has replied (Doc. 79). For the reasons that follow, the Motion is **GRANTED**.

### I.    BACKGROUND

Plaintiff Christopher Odle filed a class-action complaint against GameStop in the Circuit Court of St. Clair County, Illinois, asserting claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA"), and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. ("UDTPA"). (Doc. 1-1). Odle alleged that he purchased "new" video games at GameStop retail stores in St.

Clair County, Illinois and that GameStop deceived him by selling games that were not in the original packaging. (*Id*).

After removal to this Court, GameStop moved to dismiss. (Doc. 13). Before the motion was fully briefed, Plaintiff sought and received leave to file a First Amended Class Action Complaint ("FAC"). (Docs. 19, 21). The FAC added a claim under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq. ("MMPA"), based on Plaintiff Matthew Pfeil's purchase of a "new" game at a GameStop retail store under essentially identical circumstances. (Doc. 24).

GameStop moved to dismiss the FAC or, in the alternative, to compel arbitration. On March 28, 2025, the Court granted the motion in part and denied it in part. (Doc. 46). The Court denied the request to compel arbitration, finding no enforceable arbitration agreement. (*Id.*). The Court dismissed all claims for failure to state a claim and granted leave to amend within 14 days. (*Id.*).

With respect to Odle's ICFA claim, the Court applied Rule 9(b)'s heightened pleading standard because the claim rested on allegedly deceptive (rather than purely unfair) conduct. Specifically, the claim was premised on GameStop's representation that the games were "new" even though the original packaging had been opened so that the discs could be stored behind the counter for theft-prevention purposes. The Court held that Odle failed to plead a plausible deceptive act or practice, explaining that a reasonable consumer would understand "new" to mean unused and unowned, not necessarily factory-sealed. GameStop's representation was therefore literally true, and Odle's contrary interpretation was not one that a significant portion of reasonable consumers

would share. Additionally, the Court noted that Odle's own allegations, which distinguished "new" from "unopened" and acknowledged GameStop's security policy, further undermined any claim of deception.

The Court held that the UDTPA claim failed for the same reason and, independently, because the statute authorizes only injunctive relief, which requires plausible allegations of ongoing or imminent future harm. Once Odle learned of the practice, future injury was unlikely. (Doc. 46, pgs. 22-23).

Pfeil's MMPA claim was dismissed on parallel grounds: the allegation that games sold as "new" were unopened did not state a deceptive representation or material omission that would mislead a reasonable consumer. In short, the Court found that Plaintiffs received exactly what they purchased – unused, unowned games. (Doc. 46, pgs. 20–24).

On April 11, 2025, Plaintiffs filed a Second Amended Complaint ("SAC"). (Doc. 51). The SAC reasserted the same causes of action and added, on information and belief, generalized allegations that GameStop had, at unspecified times and locations, sold as "new" games that had previously been played by employees or owned by other consumers. (*Id.*). GameStop again moved to dismiss. (Doc. 54).

After briefing, Plaintiffs obtained leave to file a Third Amended Complaint ("TAC"). (Doc. 69). The TAC added a claim under the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0901 et seq. and 41.600 et seq. ("NDTPA"), based on new Plaintiff Robert McConnell's online purchase of a "new" game that arrived without its original factory packaging. (Doc. 70). On February 17, 2026, GameStop filed the present

motion to dismiss, arguing that the TAC still fails to allege facts supporting any fraudulent scheme and seeking dismissal with prejudice. (Doc. 72).

## II.   PRELIMINARY MATTERS

### A.  Allegations Outside the Operative Complaint

Plaintiffs' opposition relies heavily on allegations that do not appear in the TAC. In particular, Plaintiffs contend that they have alleged GameStop allowed employees to play video games and then resell those games as new without disclosing the practice to customers. (Doc. 73 at 2, 12, 19–22, 27). Although those allegations were included in the SAC (pleaded on "information and belief"), they were omitted from the TAC. [1] Plaintiffs

---

[1] Plaintiffs' opposition brief repeatedly refers to GameStop's alleged policy of allowing employees to play games and then selling those games as new. (Doc. 73 at 2, 12, 19–22, 27). Plaintiffs cite to paragraphs 29 through 37 of the complaint. (*Id.*). Paragraphs 29-37 of the SAC allege as follows:

> 29. In addition, upon information and belief, GameStop has had for many years, including the years that Odle and Pfeil purchased games, whereby GameStop employees and managers could "check out" games to play them and/or play them in-store
>
> 30. Upon information and belief, this policy included the "gutted" new games which GameStop would take from the original packaging.
>
> 31. Further, upon information and belief, even if GameStop did not have an "official" company policy of allowing managers and employees to check-out new games, GameStop was aware that the practice was occurring in its locations.
>
> 32. After the managers and employees would "check out" the "new" games and play them, the games would be returned to the sleeves behind the counter.
>
> 33. Upon information and belief, no marking was placed on the "played" or "used" games that would distinguish them from a game that had not been played or used.
>
> 34. As such, a consumer could not and would not know that a game they were purchasing as new and not used in fact had already been played.
>
> 35. GameStop did not disclose the above to Odle or Pfeil at any of the times they purchased games.
>
> 36. On information and belief, GameStop regularly and knowingly sells used games as "new" when they are in fact not "new."
>
> 37. The "gutting" policy facilitates this fraud by making it impossible for a consumer to know whether or not a game has actually been used even though it is labelled as "new."

(Doc. 51 ¶¶ 29-37). Paragraphs 29 through 37 of the TAC state as follows:

also rely on anonymous chat forum posts that discuss the scheme alleged in the SAC. Those posts are referenced for the first time in Plaintiffs' opposition briefing.

On a Rule 12(b)(6) motion, the Court ordinarily is confined to the well-pleaded allegations of the operative complaint, documents attached to or incorporated by reference in it, and matters properly subject to judicial notice. *See Kuebler v. Vectren Corp.,*

---

29. Generally, the expectation of consumers is that when they buy a "new" game, it is a game for which the original manufacturer packaging has not been opened.

30. It is a well-known fact in the video game industry and resale market that a game in its "original" manufactures packaging that is still sealed is worth more than a game that has been opened.

31. For these reasons, purchasers of "new" unopened games are willing to pay a premium in price for "new" and/or unopened games versus a "used" or "opened" or "pre-owned" game.

32. GameStop is aware of this, and prices "new" games differently than "used" and "pre-owned" games.

33. To further illustrate GameStop's awareness of this point, GameStop's return policy on its website draws a specific difference between the return of "unopened" products such as video games and those that have been opened.

34. Upon information and belief, GameStop has a company-wide policy that limits or prohibits placing unopened video games on the floor of retail stores because of a belief that such games are easily portable and may be stolen.

35. To combat this perceived risk, GameStop has a company-wide policy that provides that video game discs are to be kept behind the counter to prevent theft.

36. As a result, almost every "new" game that GameStop sells has actually been opened.

37. GameStop effectuates this policy despite the fact that GameStop's return policy draws a distinction between opened and unopened games.

(Doc. 70 ¶¶ 29-36). Accordingly, the cited paragraphs in the TAC do not include the referenced allegations. The Court was unable to locate any allegations in the TAC pertaining to the alleged scheme. The TAC does, however, include the following allegations:

41. GameStop sells used and/or open box games as "new" both in its stores and online from its website.

42. GameStop intentionally, knowingly and maliciously markets and advertises used and/or open box games as "new" when it knows they are not, both in its retail stores and online. sells used and/or open box games as "new" both in its stores and online from its website.

(Doc. 70 ¶¶ 41-41).

13 F.4th 631, 636 (7th Cir. 2021); *Knockum v. Dignan*, No. 24 C 10530, 2026 WL 446399, at *1 (N.D. Ill. Feb. 17, 2026). An amended complaint supersedes all prior pleadings and renders them of no further legal effect. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."); *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998) ("[A]n amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*."). Facts omitted from the operative complaint are treated as abandoned and may not be considered on a motion to dismiss. *Id*. at 1204–05.

The Seventh Circuit recognizes that a plaintiff opposing a Rule 12(b)(6) motion enjoys greater flexibility than the defendant and may submit materials outside the pleadings to illustrate the factual allegations already contained in the operative complaint, or to show that those allegations are likely to have evidentiary support, without converting the motion into one for summary judgment. *Kuebler v. Vectren* Corp., 13 F.4th at 636–37. That flexibility, however, is limited: any elaboration or supporting material must be "consistent with the pleadings." *Id*. (quoting *Geinosky*, 675 F.3d at 745 n.1).

Here, the anonymous forum posts and the employee "check-out"/play-and-resell allegations are not consistent with the TAC. They concern a specific internal practice wherein employees check out and play new games before those games are returned to inventory and sold as new. That practice was alleged in the SAC but omitted from the TAC. Even if the posts could be said to touch the TAC's more general allegation that used

games are sold as new, Plaintiffs' opposition uses them to revive the abandoned employee-play theory. Plaintiffs may not reintroduce, through briefing, factual details or a theory of liability that the operative complaint itself omits.

Regardless, even if the Court were to consider the anonymous chat posts, they would not save Plaintiffs' claim under Rule 9(b). Anonymous chat-room posts do not furnish the "some firsthand information" needed "to provide grounds to corroborate [plaintiffs'] suspicions," as Rule 9(b) requires. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). *See* e.g., *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739 (N.D. Ill. 2023) (finding anonymous online customer reviews insufficient to corroborate suspicions under Rule 9(b) and noting that, "[w]hen it comes to particularity (and plausibility, too), the experience of a no-name person does not add much heft to the complaint."); *Halperin v. Int'l Web Servs.*, LLC, 123 F. Supp. 3d 999, 1008 (N.D. Ill. 2015) ("[A] list of anonymous and unsubstantiated user comments … badly flunks Rule 9(b)").

Accordingly, the Court disregards arguments and citations in Plaintiffs' opposition that rest on the abandoned SAC allegations or the unpleaded anonymous chat-room posts.

### B. Stay of Discovery

On July 24, 2024, the Court entered a scheduling and discovery order that authorized discovery sufficient to permit the Court to determine whether the requirements of Rule 23 had been satisfied, including a sufficient inquiry into the merits

of the case to ensure appropriate management of the case as a class action. (Doc. 23-1). On April 4, 2025, at the request of the parties, an amended scheduling order was entered allowing additional time to complete discovery. (Docs 49 and 50). On April 11, 2025, Plaintiffs filed their Second Amended Complaint. (Doc. 51). On May 16, 2025, GameStop filed a motion to dismiss the Second Amended Complaint and a Motion to Stay Discovery pending resolution of the most recent motion to dismiss. (Docs. 54 and 55). Plaintiffs did not respond to the Motion to Stay, and on June 17, 2025, after discovery had been open for nearly 11 months, the Court granted GameStop's Motion to Stay Discovery. (Doc. 58).

Plaintiffs now argue that they should be excused from any pleading deficiencies because GameStop withheld discovery responses and later obtained the stay, creating an unfair "catch-22." They contend that dismissal would reward GameStop's "gatekeeping" of employee identities and personnel files that might support their claims. Plaintiffs' argument is not well taken. Rule 9(b) may be relaxed only upon a concrete showing that the missing particulars "could not have been obtained without discovery." *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Plaintiffs make no such showing. To the contrary, they had nearly 11 months to conduct discovery. They previously pleaded a version of the employee check-out theory in the SAC and then omitted it from the TAC, demonstrating both that they were capable of articulating the theory and that they had an ample opportunity, both before and after the SAC, to investigate it further through discovery or other means before filing the operative complaint.

The purpose of Rule 9(b)'s heightened pleading standard is to require a more extensive pre-filing investigation. "That purpose would be frustrated 'by allowing a [plaintiff] to make vague claims of fraud, and then permitting him to engage in discovery in the hope of uncovering enough specifics to adequately plead a case.' " *United States v. Safeway, Inc.*, No. 11-cv-3406, 2016 WL 3906571, at *1 (C.D. Ill. July 14, 2016) (quoting *U.S. ex rel. Liotine v. CDW-Government, Inc.*, No. 05-cv-33, 2009 WL 72058, at *1 (S.D. Ill. Mar. 18, 2009)). Put another way, if a plaintiff "does not presently possess the relevant, indispensable facts to state a fraud claim with particularity, the precepts upon which Rules 9(b) and 11 are founded mandate that he has no business charging a party with fraud on the slim hope that he may use the various and expensive tools of discovery available under the Federal Rules to put meat on the bare bones of his fraud claim. Fraud is too serious a charge, and litigation is too expensive, to allow such tactics." *Spearman v. Dressler*, No. 86 C 8069, 1987 WL 9025, at *3 (N.D. Ill. Mar. 27, 1987) (quoting *Beck v. Cantor, Fitzgerald & Co.*, 621 F. Supp. 1547, 1552–53 (N.D. Ill. 1985)).

Further, as the Seventh Circuit has explained, even allegations made on information and belief require the plaintiff to plead "plausible grounds for suspecting that the defendant was engaged in a fraudulent scheme." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). Plaintiffs supply none. Their request for employee names and personnel files is precisely the sort of post-filing inquiry that Rule 9(b) is designed to prevent.

Plaintiffs' failure to oppose the stay further undercuts their position. They cannot now complain of the consequences of a stay they declined to contest, particularly where discovery was open for nearly 11 months.

Finally, the purposes of Rule 9(b) is to protect defendants from the reputational harm and settlement pressure of unsubstantiated fraud allegations, and to require plaintiffs to conduct a careful pre-filing investigation. *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir. 2005); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469–70 (7th Cir. 1999); *see also United States v. Safeway, Inc.*, No. 11-CV-3406, 2016 WL 3906571 (C.D. Ill. July 14, 2016) (staying discovery to preserve Rule 9(b) policies). Accepting Plaintiffs' argument would frustrate these goals. Accordingly, the Court rejects Plaintiffs' catch-22 argument.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, the plaintiff must offer "some specific facts to support the legal claims asserted in the complaint." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *McAuley v. City of Chicago*, 671 F.3d

611, 616 (7th Cir. 2011) (citation modified)). A reviewing court, in turn, accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013).

Claims under the ICFA, UDTPA, MMPA, and NDTPA that sound in deception or fraud are subject to Federal Rule of Civil Procedure 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011); *Hennessey v. Gap, Inc.*, 86 F.4th 823 (8th Cir. 2023); *Allstate Insurance Co. v. Belsky*, 2017 WL 7199651, at *7 (D. Nev. Mar. 31, 2017). Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the alleged fraud with particularity. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

A plaintiff generally cannot satisfy Rule 9(b) with allegations made on information and belief. *Pirelli*, 631 F.3d at 442–43. Such allegations are permissible only if (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides "the grounds for his suspicions." *Id.* at 443. Those grounds must make the allegations plausible and must include "some firsthand information" to corroborate the suspicions. *Id.* at 446. Secondhand sources, such as other lawsuits, industry statistics, general economic incentives, or inferences drawn from a return policy, do not suffice. *Id.* at 444–46; *Vineyard v. La Terra Fina USA, LLC*, No. 3:24-CV-00704-NJR, 2026 WL 554545, at *5–7 (S.D. Ill. Feb. 27, 2026).

A practice is deceptive if it creates a likelihood of deception or has the capacity to deceive a significant portion of the general consuming public or of targeted consumers,

acting reasonably in the circumstances. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020). Although context matters, the central question is how real consumers understand the representation. Dismissal is appropriate when the plaintiff's interpretation is facially implausible. *Bell*, 982 F.3d at 477.

## IV.   THIRD AMENDED COMPLAINT

In the Third Amended Complaint, Plaintiffs allege the following.

### A.  Christopher Odle (Doc. 70 ¶¶ 5–11)

In September 2021 and December 2022, Odle purchased games from a GameStop retail location in St. Clair County, Illinois. He selected "new" (not used or pre-owned) video games whose packaging did not contain the disc or cartridge. He informed the sales associate he wished to buy "new" games and paid a premium price expecting them to be new.

### B.  Matthew Pfeil (Doc. 70 ¶¶ 12–17)

In October 2023, Pfeil purchased a game from a GameStop retail location in St. Louis County, Missouri. He selected a "new" (not used or pre-owned) video game whose packaging did not contain the disc or cartridge. He informed the sales associate he wished to buy a "new" game, paid a premium price expecting it to be new, and was sold the game as new.

### C.  Robert McConnell (Doc. 70 ¶¶ 18–26)

In September 2025, McConnell purchased from GameStop's website a video game marketed as "new" at a price within the range for new games. Upon arrival, "it was clear that the game had previously been opened and was not 'new' ." (Doc. 70 ¶ 20). He

emailed GameStop objecting; GameStop replied that the game "may have been opened and resealed, which is not the experience we aim to deliver," and promised a replacement. McConnell returned the original and received a second copy in the same condition; original manufacturer packaging removed and resealed with a GameStop sticker.

### D. Facts Common to All Counts (Doc. 70 ¶¶ 27–47)

Consumers reasonably expect a "new" game to remain in its unopened original manufacturer packaging. Unopened sealed games command a premium over opened, used, or pre-owned games in the industry and resale market; GameStop prices them accordingly.

Upon information and belief, GameStop maintains a company-wide policy against placing unopened games on the sales floor due to theft risk, instead keeping discs behind the counter. Consequently, nearly every "new" game it sells has been opened. GameStop follows this practice despite its own return policy distinguishing opened from unopened games and despite knowing that sealed original packaging adds market value. GameStop nevertheless markets and sells these opened games as "new" in stores and online. It does so intentionally, knowingly, and maliciously. Purchasers of such games pay a premium for products of lower value, with fewer return options and diminished resale worth. A used or returned game has the same market value as one whose original packaging has been removed and resealed by GameStop; consumers cannot distinguish the two. GameStop exploits this indistinguishability by regularly selling previously

owned or played games as "new," thereby capturing the price differential between new and used games.

V.   ANALYSIS

### A. The Common Allegations Do Not State a Claim

The TAC alleges that consumers reasonably expect a "new" game to remain in unopened original manufacturer packaging; that sealed games command a premium in the industry and secondary market; that opened games (even if unused) therefore have lower value, fewer return options, and diminished resale worth; and that GameStop knowingly sells opened games as "new." It further alleges that GameStop regularly and knowingly sells previously used or played games as "new."[2] (Doc. 70 ¶¶ 27–47.)

These allegations do not cure the deficiencies identified in the Court's March 28, 2025 Order and otherwise fail to state a claim under applicable authority. First, the claims that GameStop maintains a company-wide policy of opening nearly every "new" game and that it regularly sells previously used or played games as "new" are information-and-belief allegations. This is so even though the TAC does not expressly use that phrase for every such claim. As the Seventh Circuit has explained, allegations can fall within the definition of information-and-belief pleading regardless of whether the complaint uses those exact words. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("Although Pirelli did not use the phrase 'information and belief' in its complaint, its allegations fall squarely within the definition

---

[2] Although the used-game allegation does not expressly use the phrase "upon information and belief," it is the functional equivalent of such pleading and is unsupported by any firsthand information. *See Pirelli*, 631 F.3d at 442–43.

of the term."). Plaintiffs identify no specific game, store, date, employee, transaction, or other concrete fact in which a previously used or played game was sold as new. They offer no firsthand information corroborating allegation. General industry observations, secondary-market pricing, packaging practices, and inferences drawn from GameStop's return policy are precisely the sort of secondhand speculation *Pirelli* rejects. *Id.* at 444–46; *Vineyard*, 2026 WL 554545, at \*5–7. Without some firsthand corroboration that makes the fraud claim plausible, these allegations do not satisfy Rule 9(b).

Second, the value-differential theory does not render the term "new" deceptive. Consumer-fraud statutes do not redress personal expectations that are unrooted in a defendant's actual statements. *Odle v. GameStop Corp.*, 774 F. Supp. 3d 982, 999 (S.D. Ill. 2025); *see also Schramm L. Grp., LLC v. Pitney Bowes Inc.*, No. 25 CV 5830, 2026 WL 636820, at \*3 (N.D. Ill. Mar. 6, 2026) (quoting *Odle*). Plaintiffs do not allege that GameStop represented the games as "unopened," "factory-sealed," or "in original manufacturer packaging." They allege only that the games were sold as "new." In the March 28, 2025 Order, this Court held that the primary expectation conveyed by "new" is that a game is unowned and unused, not that it remains in factory-sealed packaging, and that Plaintiffs' interpretation of "new" to mean "unopened" was unreasonable. *Odle*, 774 F. Supp. 3d at 999. Alleging that sealed packaging carries secondary-market or resale value does not transform the ordinary meaning of "new" into a representation about factory-sealed packaging, nor does it make the label deceptive to a significant portion of reasonable consumers. *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–77 (7th Cir. 2020); *Matthews v. Polar Corp.*, No. 22-CV-649, 2023 WL 4534543, at \*9 (N.D. Ill. Mar. 22, 2023)

("Consumers cannot impose content that isn't there, and impute meaning that is not fairly derived from the labeling itself.").

Finally, statements that GameStop acted "intentionally, knowingly and maliciously" are legal conclusions not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.  Odle's and Pfeil's Claims Fail

Odle and Pfeil purchased games in-store. They selected packaging that did not contain the disc or cartridge and were told the games were "new." Other than generalized and conclusory assertions about GameStop's practices, they do not allege that the specific games they purchased were previously used, previously owned, damaged, incomplete, or non-functional. Abstract assertions that GameStop "regularly and knowingly sells used games as 'new'" do not establish that these plaintiffs received a used game or were personally deceived or injured. Without that link, there is no plausible claim of deception or actual damages under the ICFA, UDTPA, or MMPA.

The claims also fail under the reasonable-consumer standard. As the undersigned previously explained, consumer-fraud statutes "do not redress personal expectations unrooted in a defendant's actual statements." *Odle v. GameStop Corp.*, 774 F. Supp. 3d 982, 999 (S.D. Ill. 2025). Plaintiffs do not allege that GameStop represented the games as "unopened," "factory-sealed," or "in original manufacturer packaging." They allege only that the games were sold as "new." In the March 28, 2025 Order, this Court applied the reasonable-consumer standard and held that the primary expectation conveyed by "new" is that a game is unowned and unused, not that it remains in factory-sealed

packaging, and that Plaintiffs' contrary interpretation was unreasonable. *Odle*, 774 F. Supp. 3d at 999. Nothing in the TAC alters that analysis.

Additionally, because the opened condition of the packaging was observable (or at least knowable) at the point of sale, the reliance and deception theories are further undercut. Even accepting the value-differential allegation, Odle and Pfeil fail to plead that any premium they paid was caused by a deceptive representation rather than by ordinary retail inventory practices, or that they suffered a cognizable injury beyond a secondary-market packaging expectation unrooted in any actual representation by GameStop.

### C. McConnell's NDTPA Claim Fails

McConnell purchased online. Unlike the in-store plaintiffs, the opened and resealed condition of the packaging was not apparent until delivery. He alleges that upon arrival "it was clear that the game had previously been opened and was not 'new,'" that GameStop acknowledged the game "may have been opened and resealed," and that the replacement arrived in the same condition.

The online nature of the purchase removes the point-of-sale observability argument that applies to Odle and Pfeil, but it does not save the claim. Beyond the fact that the packaging had been opened and resealed, McConnell alleges no facts suggesting that the game itself was previously used or played. His claim that the game was "not new" is conclusory and rests on an interpretation of "new" that this Court has already rejected as unreasonable under the reasonable-consumer standard. *Odle*, 774

F. Supp. 3d at 999. The GameStop email confirms only opening and resealing; it does not admit prior use.

Accordingly, McConnell's claim fails for the same reasons that defeat Odle's and Pfeil's claims. Consumer-fraud statutes do not protect expectations unrooted in the defendant's actual statements. *Id.*; *Schramm*, 2026 WL 636820, at *3. McConnell does not allege that GameStop represented the game as "unopened" or "factory-sealed." He alleges only that it was sold as "new." And as the Court previously held, to a reasonable consumer, "new" conveys that a game is unowned and unused, not that it remains in factory-sealed packaging.

Even if the absence of original packaging is accepted as a deviation from McConnell's subjective expectation, he still fails to plead cognizable damages. Under Nevada law, a plaintiff who receives the true value of the goods or services purchased has not suffered damages for purposes of NRS 41.600, even if the plaintiff would not have made the purchase had the omitted or misrepresented fact been disclosed. *Leigh-Pink v. Rio Props.*, LLC, 512 P.3d 322, 325–28 (Nev. 2022). McConnell does not allege that the game was previously used, damaged, incomplete, or non-functional. The claimed diminution is limited to packaging status and secondary-market resale potential. As previously explained, any such expectation is not based on any representation allegedly made by GameStop. As such, it is not a cognizable loss of the value of the product.

## VI.    CONCLUSION

For the foregoing reasons, GameStop Corporation's Motion to Dismiss Plaintiffs' Third Amended Complaint under Rule 12(b)(6) for failure to state a claim (Doc. 72) is

**GRANTED**. Because this is Plaintiffs Third Amended Complaint, the Court believes that any further amendment would be futile. Accordingly, Plaintiffs' claims are dismissed with prejudice. The Court **DIRECTS** the Clerk to close the case and to enter judgment accordingly.

**SO ORDERED.**

Dated: August 7, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.08.07 15:06:49 -05'00'

DAVID W. DUGAN
United States District Judge